HARVEY W. HEUP and GLADYS L. HEUP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heup v. Commissioner
Docket No. 8671-73.
United States Tax Court
T.C. Memo 1975-23; 1975 Tax Ct. Memo LEXIS 350; 34 T.C.M. (CCH) 110; T.C.M. (RIA) 750023; February 10, 1975, Filed Harvey W. Heup, pro se. F. Patrick Matthews, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent has determined a deficiency of $1,165.07 in petitioners' income tax for 1970. The sole issue for decision is whether two payments of $2,500 each, made by petitioner Harvey W. Heup to his former wife, under a divorce judgment, were periodic payments in discharge of a legal obligation of support imposed upon him because of the marital relationship within the meaning of section 71(a)(1) [1]/ and thus were deductible by petitioners under section 215; or whether the payments were made in settlement of the former wife's property rights. *352 FINDINGS OF FACT Harvey W. Heup and Gladys L. Heup (hereinafter referred to as petitioners), husband and wife, were legal residents of Grafton, Wisconsin, at the time the petition herein was filed. Harvey W. Heup (hereinafter referred to as Heup) was married to Judi Heup (hereinafter referred to as Judi) on October 10, 1964, in Milwaukee, Wisconsin. During the period of their marriage, Heup worked about 45 hours per week for Carlson Tool, receiving from $4.75 to $5.25 per hour. Judi worked part-time as the manager of a beauty salon and in other similar positions, and, when working, she earned approximately $120 per week. In April 1965, Heup and Judi bought a residence at a cost of about $22,000. Title to the residence was held in joint tenancy. It was purchased with a downpayment of $7,000 and a mortgage which required monthly payments of $150. At the time the property was acquired, Heup owned in his individual capacity life insurance and investments amounting to $12,287. Judi individually owned personal property in the form of savings accounts, savings bonds, and investments amounting to $2,245. During the course of their marriage, Heup and Judi accumulated the following *353 jointly owned property which had the listed fair market value in December 1967: Property
Fair Market Value
Residence
$22,800
Manhattan Fund
1,050
Savings Account
200
Heup and Judi were separated in November 1966. At that time Heup commenced temporary alimony payments to Judi. On December 22, 1967, the County Court of Ozaukee County (hereinafter the county court), Wisconsin, entered a Decision of Court, which stated that Judi was entitled to a judgment of absolute divorce. The Decision of Court contained the following direction: 2. The judgment shall provide that plaintiff [Judi] retain those items of personalty identified in the Findings of Fact as being her sole property and defendant [Heup] is entitled to retain all those items of personalty identified as his sole property including his automobile and those items identified as being owned jointly by plaintiff and defendant in the sum of $1050.00 and $200.00 and defendant is also to be awarded in the judgment the homestead of the parties and plaintiff is required to execute a proper deed of conveyance to said homestead to defendant, and is also required to assign such items of personalty as are herein *354 awarded defendant, provided however that defendant shall pay to plaintiff the sum of $5000.00 out of assets belonging to him as a full and final payment to her and in lieu of all alimony, plaintiff being awarded no alimony. * * * * * On May 22, 1968, the county court entered its Judgment of Divorce, which related back to the Decision of Court entered December 22, 1967. The Judgment of Divorce stated in part: That the defendant [Heup] shall pay to the plaintiff [Judi] the sum of Five Thousand ($5,000.00) Dollars out of his assets in lieu of any alimony and the plaintiff is awarded no alimony. * * * * * That the awards of personalty and real estate are made subject to defendant paying the $5,000 awarded to plaintiff. The payments were not subject to any contingencies other than the transfer of the designated property to Heup. The Judgment of Divorce was affirmed by the Supreme Court of the State of Wisconsin on December 2, 1969. Heup failed to make prompt payment of the $5,000 judgment, and in July 1970, he was ordered to appear before the county court. At a hearing held on September 21, 1970, the county court ordered appointment of a trustee to dispose of Heup's *355 assets and pay the $5,000 judgment. Heup then satisfied the $5,000 judgment with two checks, each in the amount of $2,500, dated September 21, 1970, and October 5, 1970. These checks were surrendered to a judge of the county court who gave them to Judi's counsel. In October 1970, Judi executed a quitclaim deed of the aforementioned residence to Heup and endorsed to him some jointly held stock certificates, all of which were delivered to Heup after the $5,000 was paid. Heup wrote the following on the checks he delivered in satisfaction of his obligation under the judgment: Payee's endorsement discharges payer from legal obligations due to the marital relationship & is not for property rights. The names of Judi Heup and Marshall Herro (Judi's attorney) appear on the back of both checks. Judi's name was written by her mother, Gladys Gutzlaff, who was given a power of attorney for the purpose of endorsing the checks and settling the amount owed to Judi's attorney. At no time during the pendency of the divorce proceeding was there any discussion or negotiation between Heup and Judi concerning the award of postdivorce alimony. Judi did not see the two $2,500 checks and was not aware *356 of the statements appearing on the front of those checks. No agreement, oral or written, was ever entered into between Judi and Heup regarding the payment of the $5,000 awarded in the Judgment of Divorce. Petitioners filed a timely joint Federal income tax return for 1970 on which they deducted the $5,000 total of the two payments to Judi as alimony payments in discharge of legal obligations arising from the marital relationship. Respondent treated the payments as a property settlement and disallowed the deduction. ULTIMATE FINDING OF FACT The two $2,500 payments made by Heup to Judi were not periodic payments in the nature of alimony, but were payments made as part of a property settlement pursuant to the Judgment of Divorce. OPINION Section 215 [2]/ allows a husband to deduct payments to his wife which are includable in her gross income under section 71. [3] The wife's gross income includes periodic payments received from her husband, pursuant to a divorce decree, discharging the legal obligation imposed upon him because of the marital or family relationship. Sec. 71(a); sec. 1.71-1(b)(4), Income Tax Regs.; Grant R. Bishop,55 T.C. 720, 724 (1971). *357 It is well settled, however, that payments in discharge of a property settlement are capital in nature and are neither includable in the wife's income under section 71 nor deductible by her husband under section 215. Marion R. Hesse,60 T.C. 685, 691 (1973), appeal dismissed (C.A. 3, March 1, 1974); Ernest H. Mills,54 T.C. 608, 615 (1970), affd. 442 F.2d 1149 (C.A. 10, 1971). *358 Petitioners claim that the two $2,500 payments made to Judi constituted payments in discharge of a support obligation attributable to Heup's and Judi's marital relationship, and as such are includable under section 71(a)(1) in Judi's gross income. Petitioners conclude that they are therefore entitled, under section 215, to a deduction equal to those payments. We hold for respondent. In determining whether the payments in dispute are in the nature of alimony or a division of property, the answer turns upon the facts of the case and not the formal labels used in the decree. Bernatschke v. United States, 176 Ct. Cl. 1234, 1239, 364 F.2d 400, 404 (1966); AnnHairston Ryker, 33 T.C. 924, 929 (1960). In our opinion, the relevant facts show quite clearly that the payments were made in order to divide the marital property. The findings and decision of the county court leave no doubt as to the nature of the payments. The county court specifically found that Heup and Judi were joint owners of their residence worth $22,800 and other investments worth a total of $1,250, [4]/ and carefully differentiated in its holding between the assets owned *359 by the parties jointly and those owned separately. Under the terms of that court's decision, Heup was to retain all jointly owned property. [5] Thus, it is clear that Judi owned valuable property rights for which she was entitled to payment. See Ann Hairston Ryker, supra; cf. Wilma Thompson,50 T.C. 522, 526 (1968). The Decision of Court and the Judgment of Divorce conditioned the transfer of this joint property to Heup upon his payment of $5,000 to Judi. Indeed, it was only after receipt of the total of the $5,000 payment in late 1970 that Judi executed a *360 quitclaim deed of the residence and endorsed the jointly owned securities. These are all earmarks of a "capital transfer," not the fulfillment of a support obligation. McCombs v. Commissioner, 397 F.2d 4, 7 (C.A. 10, 1968), affirming a Memorandum Opinion of this Court; Lounsbury v. Commissioner,321 F.2d 925, 927 (C.A. 9, 1963), affirming 37 T.C. 163 (1961). Finally, none of the elements which normally identify "alimony" payments is present to contradict the facts supporting a property settlement. The payments were not geared to Heup's income or Judi's needs, see Ann Hairston Ryker , supra at 929; Brown v. United States, 121 F. Supp. 106, 107 (N.D. Cal. 1954), and the judgment created an absolute obligation to pay a fixed sum without regard to Judi's death, remarriage, or change of economic circumstances. See Taylor v. Campbell, 335 F.2d 841, 845 (C.A. 5, 1964); Campbell v. Lake,220 F.2d 341, 343 (C.A. 5, 1955). In addition, there is no evidence of any negotiations concerning postdivorce alimony, see Grant R. Bishop, supra at 725-726; *361 Bernatschke v. United States,supra at 407. All of these facts show that the payments were made in exchange for Judi's surrender of property rights, not as alimony. Petitioners contend, however, the endorsement and negotiation of the checks by Judi's agent bearing the statement that the payee's "endorsement discharges payer from legal obligations due to the marital relationship" modified the court decree and are decisive. We do not agree for two reasons. First, Heup already had a legal obligation to pay Judi $5,000 as a property settlement. The law in Wisconsin is that the performance of an act by a party already under a legal obligation to perform such act is not sufficient consideration to support a new contractual agreement. See Beacon Fed. S. & L. Ass'n v. Panoramic Enterprises, Inc.,8 Wis.2d 550, 554-555, 99 N.W.2d 696, 698-699 (1959). In delivering the checks to the county court, Heup manifestly intended to satisfy the Judgment of Divorce and avoid liquidation of his assets by a trustee. Since he made the payments to satisfy his preexisting legal obligation, there was no consideration for any other agreement. Thus, irrespective of any endorsement *362 of the checks, the statement written on each check was ineffective as a matter of contract law to modify his legal obligation. Moreover, the county court itself was without jurisdiction to modify the property settlement 60 days after the expiration of the term of the court during which the judgment was entered. Wis. Stat. Ann. secs. 253.165, 269.46 (1971); Hooker v. Hooker,8 Wis.2d 331, 99 N.W.2d 113 (1959). The checks were issued long after the court had lost jurisdiction. Since the court lacked jurisdiction to modify the decree, one of the parties obviously could not do so. Furthermore, it has been held in Wisconsin that ( Anderson v. Anderson, 8 Wis.2d 133, 141, 98 N.W.2d 434, 439 (1959)): The parties by their actions subsequent to the judgment cannot convert a provision for property division into one for payment of alimony. This is not a proper situation to give weight to any practical construction by the parties. Second, assuming arguendo that the payments were not in settlement of Judi's property rights, petitioners' position remains untenable. Regardless of the source of Heup's obligation, the payments were not "periodic" as required *363 by section 71(a)(1). McCombs v. Commissioner, supra at 7. Rather, the payments are of a type described in section 71(c)(1). [6]/ Under that section, installment payments discharging a part of an obligation to pay a principal sum which is specified in the decree are not periodic payments. Section 1.71-1(d)(3)(i), [7] Income Tax Regs., allows payments made over a period of less than 10 years to qualify as "periodic" payments only if they are subject to one or more of the contingencies of the (a) death of either spouse, (b) remarriage of the wife, or (c) change in the economic status of either spouse, and the payments are in the nature of alimony or an allowance for support. The payments in this case meet none of these requirements. Thus, they were not "periodic" within the meaning of section 71(a)(1). *364 The payments are not includable in Judi's income under any of petitioners' theories and, therefore, are not deductible by petitioners under section 215. Decision will be entered for the respondent.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.
2. / SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. (b) Cross Reference.-- For definitions of "husband" and "wife", see section 7701(a)(17). ↩
3. Sec. 71 in relevant part reads as follows: SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (1) Decree of divorce or separate maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.↩
4. /The county court found-- That defendant [Heup] and plaintiff [Judi] together are the owners of a home valued at $22,800.00 * * * and joint investments * * * in the sum of $1050.00 in Manhattan Fund and $200.00 in Cedarburg Savings & Loan Association. ↩
5. The county court held: 2. The judgment shall provide that plaintiff [Judi] retain those items of personalty * * * as being her sole property and defendant [Heup] is entitled to retain all those items of personalty identified as his sole property * * * and those items * * * owned jointly by plaintiff and defendant.↩
6. / SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (c) Principal Sum Paid in Installments.-- (1) General rule.--For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. ↩
7. Sec. 1.71-1(d), Income Tax Regs., states in pertinent part: (3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support.↩